## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                    No. CR 07-706 JB

BILLY GIANGOLA,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Opposed Motion to Review Conditions of Release, filed August 23, 2007 (Doc. 19)("Motion"). The Court held a hearing on September 12, 2007. The primary issues are: (i) whether the Court should set another detention hearing to consider evidence that Defendant Billy Giangola wishes to present to show that he is neither a danger to the community or a flight risk; and (ii) whether the Court should reconsider its decision to retain Giangola in custody pending trial. The Court will grant Giangola's request for another hearing, but, because Giangola has not presented new evidence that convinces the Court that it should release Giangola, the Court will otherwise deny his motion.

### FACTUAL BACKGROUND

Giangola has provided much of the personal information, and his mother, Charlene Curtiss, has verified that personal information. See Pretrial Services Report at 2, Central District of California (dated June 5, 2007)("Bond Report"). Through several hearings, the facts do not appear to be much, if any, in dispute. The primary task is to determine whether these facts suggest that Giangola is not a danger to the community or a flight risk.

1.    <u>**Giangola's History and Family Ties**</u>.

According to Giangola, he was born on July 12, 1980, in San Gabriel, California.  <u>See</u> Bond Report at 2.  He is one of two children born to the union of Michael Giangola and Charlene Curtiss.  <u>See</u> <u>id.</u>  Curtiss is employed as an Office Manager/Paralegal at a law firm in Albuquerque, New Mexico.  <u>See</u> Memorandum from Annie Candelaria, Senior U.S. Probation Officer to Judge Robert Hayes Scott, United States Magistrate Judge at 1 (dated June 28, 2007)("June 28, 2007 Memo.").

2.    <u>**Residence**</u>.

Giangola is a life-long resident of New Mexico.  <u>See</u> Motion ¶ 2, at 2.  Giangola has resided with his mother and sister at 7720 Snowberry St. N.W. in Albuquerque, New Mexico 87120.  <u>See</u> Bond Report at 1-2.  He has lived at that address since 1988.  <u>See</u> <u>id.</u> at 2.

3.    <u>**Education and Military**</u>.

Giangola earned his General Education Development Certificate ("GED") in 1997.  <u>See</u> <u>id.</u> He also attended Technical Vocational Institute ("TVI").  <u>See</u> <u>id.</u>  Giangola has not served in the military.  <u>See</u> <u>id.</u>

4.    <u>**Marital**</u>.

Giangola has not been married.  <u>See</u> <u>id.</u>  He does not have any children.  <u>See</u> <u>id.</u>

5.    <u>**Citizenship/INS/Foreign Travel**</u>.

Giangola does not possess a passport.  <u>See</u> <u>id.</u> He has not traveled outside of the United States. <u>See</u> <u>id.</u>

6.    <u>**Criminal History**</u>.

Research of local records and the National Crime Information Center ("NCIC") database by Pretrial Services for the District of New Mexico reveals an extensive criminal offense history for Giangola.  <u>See</u> June 28, 2007 Memo. at 1-4; Bond Report at 3-5; Addendum to Bail Report,

Memorandum from Annie Candelaria, Senior U.S. Probation Officer to Judge Robert Hayes Scott, United States Magistrate Judge at 1 (dated June 11, 2007)("Addendum").

On February 10, 1995, Giangola was arrested in Albuquerque, New Mexico and charged with: (i) Burglary (Dwelling); (ii) Larceny ($250.00 to $2,500.00); (iii) Unlawful Taking Motor Vehicle; (iv) Receiving Stolen Property; and (v) Larceny.  See June 28, 2007 Memo. at 3.  On March 15, 1999, in the Second Judicial District Juvenile Court in the State of New Mexico, Giangola admitted to Count 1, and the remaining Counts were dismissed.  See id.; D-202-JR-9501296.  He was sentenced to two-years probation.  See June 28, 2007 Memo. at 3.  On September 1, 1995, a warrant was issued for a probation violation.  See id.  On September 7, 1995, he was committed to Children Youth and Family Department ("CYFD") for one year.  See id.

On September 23, 1996, Giangola was arrested in Albuquerque and charged with: (i) Forgery (Issuing/Transfer); and (ii) Receiving Stolen Property.  See June 28, 2007 Memo. at 3.  On October 10, 1996, in the Second Judicial District Juvenile Court in the State of New Mexico, he admitted to Count 1, and Count 2 was dismissed.  See id.; D-202-JR-9602596.  He was committed to CYFD for two years.  See June 28, 2007 Memo. at 3.

On September 17, 1997, Giangola was arrested in Albuquerque and charged with: (i) Criminal Sexual Penetration (Force/Coercion); (ii) Kidnapping (1st degree); and (iii) Conspiracy to Commit 1st Degree Capital Felony.  See June 28, 2007 Memo. at 3.  On October 9, 1997, in the Second Judicial District Juvenile Court in the State of New Mexico, the State filed a Motion to Invoke Adult Sentence.  See id.; D-1333-JR-9700212.  On December 18, 1997, however, Counts 1 and 2 were dismissed, and Giangola pled guilty to Count 3.  See June 28, 2007 Memo. at 3. He was sentenced to CYFD to age twenty-one.  See id.

On March 1, 1999, Giangola was arrested in Albuquerque and charged with: (i) Receiving

-3-

or Transferring a Stolen Motor Vehicle; (ii) Receiving or Transferring a Stolen Motor Vehicle; and (iii) Resisting/Evading/Obstructing an Officer.  See June 28, 2007 Memo. at 3.  On January 3, 2000, in the Second Judicial District Court, Giangola pled guilty on Count 1, and on Counts 2 and 3, the State moved for Nolle Prosequi.  See id.; State v. Giangola, D-202-CR-9900747, Second Judicial District of the State of New Mexico.  He was sentenced to three-years probation.  See June 28, 2007 Memo. at 3.  On February 28, 2000, it was found that there was probable cause that Giangola was guilty of Failure to Comply with Conditions of Probation.  See id.  A warrant was issued.  See id. On June 28, 2000, he was sentenced to the Department of Corrections ("DOC") for three years, with credit for 798 days, with two-years parole to follow.  See id.

On March 23, 1999, Giangola was arrested in Albuquerque and charged with: (i) Unlawful Taking of A Motor Vehicle; (ii) Aggravated Assault on a Peace Officer (first count); (iii) Aggravated Assault on a Peace Officer (second count); and Contributing to the Delinquency of a Minor.  See June 28, 2007 Memo. at 3.  On January 3, 2000, he was found guilty on Count 2, and the State moved for Nolle Prosequi on the remaining counts.  See id.; State v. Giangola, D-202-CR-9901043, Second Judicial District of the State of New Mexico.  On June 28, 2000, Giangola was sentenced to the DOC for three years concurrent with CR99-747.  See June 28, 2007 Memo. at 3.

On December 31, 1999, Giangola was arrested in Albuquerque and charged with: (i) Harboring or Aiding a Felon; and (ii) Conspiracy.  See June 28, 2007 Memo. at 3. The U.S. Probation Office, however, located no additional information from the Albuquerque Police Department.  See id.

On May 30, 2000, Giangola was arrested in Albuquerque and charged with: (i) Unlawful Taking of a Motor Vehicle; and (ii) Larceny $250.00 to $2500.00.  See June 28, 2007 Memo. at 3. On June 7, 2000, the State moved for Nolle Prosequi on these charges.  See id.

On July 7, 2000, Giangola was arrested in Albuquerque and charged with: (i) Larceny; (ii) Unlawful Taking of a Motor Vehicle; (iii) Unlawful Taking of a Motor Vehicle; (iv) Resisting/Evading/Obstructing an Officer; and (v) Concealing Identity.  See June 28, 2007 Memo. at 4.  On February 2, 2001, in the Second Judicial District Court, he was found guilty on Count 2, and the State moved for Nolle Prosequi on the remaining counts.  See June 28, 2007 Memo. at 4; State v. Giangola, D-202-CR20002268, Second Judicial District of the State of New Mexico.  He was sentenced to thirty-four months to be served concurrently with his sentences for cases 99-747 and 99-1043.  See  June 28, 2007 Memo. at 4.

On March 31, 2003, Giangola was arrested in Albuquerque and charged with Bringing Contraband Into A Prison.  See June 28, 2007 Memo. at 4.  On October 14, 2003, in the Second Judicial District Court, he was sentenced to three years in the DOC to run consecutive to the remaining time in 99-747, in 99-1043, and in 00-2268.  See id.

On May 2, 2005, the New Mexico Parole Board determined that there was a Parole Violation in Albuquerque, New Mexico.  See June 28, 2007 Memo. at 4.  According to the New Mexico Parole Board, Giangola was instructed by his supervising officer to report and submit to urinanalysis testing, and he failed to do so.  See June 28, 2007 Memo. at 2, 4.  He was determined to be on absconder status from June 14, 2005 until his arrest on August 15, 2005.  See June 28, 2007 Memo. at 2.  On October 6, 2005, his Parole was revoked, and he was incarcerated until October 17, 2005. See June 28, 2007 Memo. at 4.

On September 20, 2005, Giangola was arrested in Albuquerque for a Probation Violation and a Drug Violation.  See June 28, 2007 Memo. at 4.  His sentence was concurrent with the sentence before the New Mexico Parole Board, with an entry on May 2, 2005.  See id.

On March 13, 2007, Giangola was arrested in Albuquerque for: (i) Trafficking Controlled

Substance; (ii) Conspiracy to Traffic Controlled Substance; (iii) Possession of Controlled Substance; and (iv) Tampering with Evidence.  See June 28, 2007 Memo. at 4. The Albuquerque Police Department and Bernalillo County Sheriff Department report that, on March 18, 2007, Martinez Bail Bond posted a $37,500.00 bond, with the condition that Giangola have no contact with co-defendant Frank Garcia.  See id.  The case remains pending.  See id.

**7.      Health.**

Giangola stated that he is in fair health.  See Bond Report at 3.  His shoulder, chest, and arm are hurting from a motorcycle accident that occurred in April of 2007.  See id.

**8.      Employment History.**

Giangola is currently unemployed.  See id.  He was previously employed at Scaffold System Inc. for three months, until his motorcycle accident in April of 2007.  See id.

**9.      Financial Statement.**

There are no income assets, liabilities, income, or expenditures to report.  See id.

## PROCEDURAL BACKGROUND

Giangola was on vacation with his mother in California when the District of New Mexico issued an arrest warrant.  While the United States District Court for the Central District of California initially considered releasing him to his mother's custody, after securing his criminal history, the court ultimately did not.  This Court has now had a number of hearings on Giangola's detention, and remains convinced that he should be detained.

**1.      New Mexico Warrant.**

According to documentation that the case agent for the Federal Bureau of Investigation provided to Pretrial Services in the Central District of California, the warrant for Giangola was issued in the District of New Mexico on April 11, 2007, under Docket Number 07CR706.  See Bond

Report at 2.  The issue of bail was not addressed on the face sheet of the California Bond Report. See id.

        2.      **California Proceedings.**

      Giangola arrived in Riverside, California on May 26, 2007, on vacation with his mother.  See id. at 1-2.  On June 5, 2007, Giangola was arrested in the Central District of California pursuant to a Complaint and Warrant issued in the District of New Mexico, on April 11, 2007, charging Giangola with Possession with Intent to Distribute more than 5 Grams of Cocaine Base and Possession with Intent to Distribute Cocaine, a violation of 21 U.S.C. § 841.  See Addendum at 1; Bond Report at 5. United States Pretrial Services in the Central District of California stated in its Bail Report that Giangola's mother is willing to sign an Unsecured Appearance Bond on her son's behalf.  See Bond Report at 2.  After speaking with Curtiss, the Pretrial Services in the Central District of California initially considered that the Court could mitigate the danger to the community and the risk of nonappearance by conditions.  See id. at 6.  Pretrial Services in California did not, however, have Giangola's entire criminal history at the time it submitted its report to the Court.  See June 28, 2007 Memo. at 1.

      On June 6, 2007, Giangola made an Initial Appearance in the Central District of California before the Honorable Oswald Prada, United States Magistrate Judge.  See June 28, 2007 Memo. at 1; Addendum at 1.  Giangola waived his "Identity Hearing"and reserved his right to a Preliminary Hearing upon his removal to the District of New Mexico.  Id.  See United States v. Bowman, 380 F.3d 387, 388-89 (9th Cir. 2004)(explaining that the defendant "was represented by appointed counsel and waived the opportunity for a hearing to determine whether he was the same person named in the indictment or warrant and thus show the Government charged the wrong person. . . . [and thereby] waived his right to an identity hearing.").  The Central District of California

subsequently ordered Giangola detained and removed to the District of New Mexico.  See June 28,

2007 Memo. at 1.  The Central District of California found him to be a danger to the community and

a non-appearance risk.  See id.  Giangola was indicted in New Mexico on April 10, 2007.  See id.

      **3.**        **New Mexico Bond Report.**

      Giangola is charged in a two-count Indictment with possession with intent to distribute crack

cocaine in Count I and powder cocaine in Count II.  See Indictment, filed April 10, 2007 (Doc. 2).

Giangola faces a minimum of five years if convicted of Count I of the Indictment.  See Motion ¶ 4,

at 2.  Giangola has remained in custody since the date of his arrest.  See Motion ¶¶ 1, 3, at 1, 2.

      On June 11, 2007, Pretrial Services for the District of New Mexico prepared an Addendum

to the Bail Report from the Central District of California.  See Addendum at 1.  Pretrial Services

stated that Giangola was then before the Court for an Initial Appearance, Arraignment, and

Detention, having been removed from the Central District of California.  See id.  Upon review of

all available case materials and the Bail Report prepared in the Central District of California on June

5, 2007, the Pretrial Services for the District of New Mexico recommended that Giangola remain

in custody pending resolution of his charges based on the identified risks.  See id.

      **4.**        **Proceedings Before Judge Schneider.**

      Giangola was arraigned on the two-count Indictment before the Honorable W. Daniel

Schneider, United States Magistrate Judge, on Tuesday, June 26, 2007, for an Initial

Appearance/Arraignment/Detention Hearing.  See Clerk's Minutes, filed June 26, 2007 (Doc. 5).

Giangola entered a plea of not guilty.  See id.  The Pretrial Services for the District of New Mexico

recommended that Giangola remain in custody pending resolution of this matter.  See Addendum

at 1.  Judge Schneider conducted a detention hearing, and concluded that Giangola was both a

danger to the community and a risk of nonappearance.  See Clerk's Minutes, filed June 26, 2007

(Doc. 5).  Judge Schneider detained him.  See Order of Detention Pending Trial, filed June 26, 2007
(Doc. 7).

A few days later, Giangola asked Judge Schneider to review his detention.  See Appeal of
Detention Order at 1-3, filed June 27, 2006 (Doc. 8).  Giangola appeared before Judge Schneider
on a Motion to Reconsider Detention Order.  See Clerk's Minutes, filed June 26, 2007 (Doc. 5).

In the motion hearing before Judge Schneider, Giangola's counsel proposed that Giangola
be released to the third-party custody of his mother.  See Federal Digital Tape Recorder ("FTR") at
9:45:26-9:46:13.[1]  The United States Probation Office ("USPO") made contact with Curtiss, who
was born on August 6, 1957 and advised that she resides at 7720 Snowberry St. N.W., Albuquerque,
New Mexico.  See June 28, 2007 Memo. at 1.  She is purchasing her home and has resided at this
address since 1989 with her teenage daughter.  See id.  She informed the USPO that Susan C. Little
and Associates had employed her as an office manager/paralegal for seven years.  See id. Curtiss
further advised that she has never been arrested, and a inquiry revealed no criminal history.   See
id.

Curtiss indicated that she was aware of Giangola's involvement in the 18th Street Gang and
criminal behavior as a youth.  See id.  She acknowledged having had little control over her son's
behavior in the past.  See id. Curtiss expressed, however, that she has seen a positive change in
Giangola.  See id.

While Pretrial Services respected Curtiss' willingness to assist with conditions of release,
Pretrial Services advised that a review of Giangola's criminal history indicates his offenses began

---

[1] The hearing was recorded on tape rather than by written transcript.  The Court is, therefore,
unable to provide pinpoint transcript citations to the dialogue at the hearing.  The Court instead cites
to the record meter.

as a juvenile, while under his mother's supervision.  See June 28, 2007 Memo. at 1. Pretrial Services also stated that there is no indication that she would be able to exert control over him as an adult. See id.

Pretrial Services attached to its report an amended criminal history report that reflects additional information regarding a parole violation in 2005.  See id. at 4.  The District of New Mexico stood by its recommendation that Giangola remain in custody pending resolution of this matter.  See id. at 2.  Pretrial Services based its position on the risk factors the Central District had identified in the original bail report, in the addendum to the bail report dated June 11, 2007, and on Giangola's offense history.  See id.

### 5.    The Court's First Detention Hearing.

Following the arraignment, Giangola's counsel appealed the entry of Judge Schneider's detention order.  See Appeal of Detention Order at 1-3, filed June 27, 2006 (Doc. 8).   The Court also conducted a detention hearing on July 5, 2007.  See Clerk's Minutes at 1, filed July 5, 2007 (Doc. 12).

At the detention hearing, the United States argued that Giangola's criminal history was "stunning" for a person who is not yet 27 years of age.  Transcript of Hearing (taken July 5, 2007) at 31:5 (Fouratt).[2]  It also represented that Giangola faced 262 to 327 months of incarceration.  See id. at 34:7 (Fouratt).  The Court concluded that Giangola was a danger to the community and therefore would not be released from custody.  See Order at 1, filed September 10, 2007 (Doc. 22). Accordingly, the Court upheld the detention order.  See id. at 3.

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

6.      __Giangola's Motion to Reconsider and the Court's Second Detention Hearing__.

Giangola moves the Court for a hearing to review conditions of release and to order, following such hearing, his release from custody.  See Motion at 1.  In his motion, Giangola asks the Court to reconsider its previous detention order, and to release him on conditions necessary to guarantee the community's safety and his appearance at future Court proceedings.   See id.

First, Giangola requests the Court to schedule a hearing so that additional evidence and testimony can be presented.  See id. at 3.  Giangola represents that this evidence will establish that he is not a danger to the community nor a flight risk.  See id.  Second, he asserts that the evidence will establish that there are conditions or a combination of conditions that the Court can impose to safeguard the community's safety and his appearance at all future Court proceedings.  See id. Giangola requests that he be released to La Pasada Halfway House in the Albuquerque, New Mexico.  See id. ¶ 2, at 2.

Giangola represents that he is interested in finding employment to help his mother with her financial difficulties.   See id.  He also agrees that, if the Court releases him from custody, he will participate in all counseling for his substance abuse problem and will attend any mental-health counseling that the Court or Pretrial Services requires.  See id. ¶ 3, at 2.  Furthermore, he states that he will comply with any drug testing that Pretrial Services requires.  See id.

Giangola assures the Court that he will abide by all conditions of his release and that he will appear for all future court proceedings.  See id. ¶ 4, at 2.  Giangola states he understands that, if he should use any illegal substance while on conditions of release, the Court will revoke his release, and the Court will return him to jail.  See id. ¶ 3, at 2.  Assistant United States Attorney Roberto Ortega opposes Giangola's release.  See id. ¶ 6, at 2.

At the September 12, 2007 hearing, Giangola again represented that he wants to be

released so that he can get a job to help his mother.  See Transcript of Hearing at  4:6-11 (taken

September 12, 2007)("Tr.")(Padilla).  Giangola contended he was not a flight risk, because he is a

life-long resident of New Mexico.  See id. at 4:4-5 (Padilla).  Giangola proposed that he be released

to a halfway house that would provide him structure by drug testing him and providing him with

counseling for his drug problem.  See id. at 5:17-23 (Padilla).  Giangola also proposed that he be

placed on a GPS electronic-tracking monitor.  See id. at 6:4-6 (Padilla).  Giangola represented that

he had been offered part-time employment as a tattooist.  See id. at 7:3-6 (Padilla).  Giangola

acknowledged that he has an extensive arrest record for someone who is 26 years old.  See id. at

14:14-15 (Padilla).

The United States contended that Giangola has a gang affiliation with the 18th Street Gang.

See id. at 18:21-23 (Ortega).  The United States noted that at least two of Giangola's felony

convictions involved assault on a peace officer.  See id. at 18:23-3 (Ortega).  The United States

argued that, even after Giangola attained majority, a pattern of adult convictions began, and

continued up until the present offense.  See id. at 20:1-3 (Ortega).  The United States contended that

it did not believe a halfway house would be able to control Giangola's "impulsive behavior any

more than his mother has in the past."  Id. at 20:13-14 (Ortega).

## ANALYSIS

The Court will grant Giangola's request for another hearing, but because Giangola has not

presented new evidence that convinces the Court that it should release Giangola, the Court will

otherwise deny his motion.  The Court continues to believe that Giangola poses a danger to the

community.  The Court also continues to believe that Giangola is a flight risk.

I.     **THE COURT CONTINUES TO BELIEVE THAT GIANGOLA IS A DANGER TO THE COMMUNITY.**

The Court continues to believe that Giangola poses a danger to the community and is particularly concerned about putting police officers at risk, given Giangola's criminal history.  The Court has concerns about the number of crimes in Giangola's criminal history, and is specifically concerned about his past crimes against property and crimes of violence against individuals, including police officers.  The Court is concerned that, if the Court had to send U.S. Marshalls to arrest Giangola, he might resist that and hurt them.

II.    **THE COURT CONTINUES TO BELIEVE THAT GIANGOLA IS A FLIGHT RISK.**

Giangola contends that he is not a flight risk and that he is not facing as much time as the United States represented to the Court at the prior detention hearing.  The Court believes Giangola continues to be a flight risk, because he has a history of probation and parole violations, because of his acknowledged history of drug use, and because of the offenses with which he is currently charged.  Giangola has not shown that the Court can reasonably expect him to conform to this Court's conditions any better than he has the state court's restrictions.

III.   **THERE ARE NO CONDITIONS OR COMBINATION OF CONDITIONS THAT THE COURT CAN ORDER IN GIANGOLA'S CASE THAT WILL REASONABLY ASSURE THE SAFETY OF THE COMMUNITY AND GIANGOLA'S APPEARANCE AT ALL FUTURE COURT PROCEEDINGS.**

Although the Court acknowledges that the risk of nonappearance may be mitigated by a combination of conditions that can be imposed, it does not believe it can be mitigated sufficiently.  Giangola contends that his need for supervision and counseling can be met if he is released to the La Pasada Halfway House.  The Court does not believe, however,  that the conditions that Giangola proposes will mitigate much, if at all, the danger he presents to the community.

The Court is concerned that Giangola was not employed at the time of his arrest.  Although

-13-

there may be some mitigating circumstances that may explain why Giangola was not employed, he does not appear to have assets, employment, or other circumstances that bring stability to people in their lives.  These facts do not take away the Court's concern that Giangola appears to be making a living with criminal activity.  The Court continues to believe that the strongest evidence that Giangola is a danger to the community can be found in his criminal history.  A third-party custodial halfway house would not provide adequate assurance given the danger Giangola poses to the community.  For these reasons, the Court believes that continued detention of Giangola pending trial is appropriate.

**IT IS ORDERED** that the Opposed Motion to Review Conditions of Release is granted in part and denied in part.  The Court has granted Defendant Billy Giangola's request for another hearing, but because Giangola has not convinced the Court that it should release Giangola, the Court will otherwise deny his motion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
   United States Attorney
Roberto D. Ortega
   Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Alonzo J. Padilla
   Assistant Federal Public Defender
Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant*

-14-