**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                       No. CR 07-706 JB

BILLY GIANGOLA,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Motion to Amend Conditions of Release, filed July 25, 2008 (Doc. 66)("Motion").  The primary issue is whether, now that the Court has granted Defendant Billy Giangola's motion to suppress evidence, it should release Giangola on conditions because he is neither a danger to the community or a flight risk.  Because Giangola has not presented new evidence that convinces the Court that it should release Giangola, the Court will deny his motion.

**<u>FACTUAL BACKGROUND</u>**

Giangola has provided much of the personal information, and his mother, Charlene Curtiss, has verified that personal information.  <u>See</u> Pretrial Services Report at 2, Central District of California (dated June 5, 2007)("Bond Report").  Through several hearings, the facts do not appear to be much, if any, in dispute.  The primary task is to determine whether these facts suggest that Giangola is not a danger to the community or a flight risk.

1.     **Giangola's History and Family Ties**.

Giangola was born on July 12, 1980, in San Gabriel, California.  See Bond Report at 2.  He is one of two children born to the union of Michael Giangola and Charlene Curtiss.  See id.  Curtiss is employed as an Office Manager/Paralegal at a law firm in Albuquerque, New Mexico.  See Memorandum from Annie Candelaria, Senior U.S. Probation Officer, to Judge Robert Hayes Scott, United States Magistrate Judge at 1 (dated June 28, 2007)("June 28, 2007 Memo.").

2.     **Residence**.

Giangola is a life-long resident of New Mexico.  See Bond Report at 2.   Giangola has resided with his mother and sister at 7720 Snowberry St. N.W. in Albuquerque, New Mexico 87120. See Bond Report at 1-2.  He has lived at that address since 1988.  See id. at 2.

3.     **Education and Military**.

Giangola earned his General Education Development Certificate ("GED") in 1997.  See id. He also attended Technical Vocational Institute ("TVI").  See id.  Giangola has not served in the military.  See id.

4.     **Marital**.

Giangola has not been married.  See id.  He does not have any children.  See id.

5.     **Citizenship/INS/Foreign Travel**.

Giangola does not possess a passport.  See id. He has not traveled outside of the United States. See id.

6.     **Criminal History**.

Research of local records and the National Crime Information Center ("NCIC") database by Pretrial Services for the District of New Mexico reveals an extensive criminal offense history for Giangola.  See Memorandum from Annie Candelaria, Senior U.S. Probation Officer, to Judge Daniel

Schneider, United States Magistrate Judge at 1-4 (dated June 11, 2007)("June 11, 2007 Memo.");

Bond Report at 3-5; Addendum to Bail Report attached to June 11, 2007 Memo. ("Addendum").

On February 10, 1995, Giangola was arrested in Albuquerque, New Mexico and charged with: (i) Burglary (Dwelling); (ii) Larceny ($250.00 to $2,500.00); (iii) Unlawful Taking Motor Vehicle; (iv) Receiving Stolen Property; and (v) Larceny.  See Addendum at 1.  On March 15, 1999, in the Second Judicial District Juvenile Court in the State of New Mexico, Giangola admitted to Count 1, and the remaining counts were dismissed.  See id.; D-202-JR-9501296.  He was sentenced to two-years probation.  See Addendum at 1.  On September 1, 1995, a warrant was issued for a probation violation.  See id.  On September 7, 1995, he was committed to Children Youth and Family Department ("CYFD") for one year.  See id.

On September 23, 1996, Giangola was arrested in Albuquerque and charged with: (i) Forgery (Issuing/Transfer); and (ii) Receiving Stolen Property.  See id.  On October 10, 1996, in the Second Judicial District Juvenile Court in the State of New Mexico, he admitted to Count 1, and Count 2 was dismissed.  See id.; D-202-JR-9602596.  He was committed to CYFD for two years.  See Addendum at 1.

On September 17, 1997, Giangola was arrested in Albuquerque and charged with: (i) Criminal Sexual Penetration (Force/Coercion); (ii) Kidnapping (1st degree); and (iii) Conspiracy to Commit 1st Degree Capital Felony.  See id.  On October 9, 1997, in the Second Judicial District Juvenile Court in the State of New Mexico, the State filed a Motion to Invoke Adult Sentence.  See id.; D-1333-JR-9700212.  On December 18, 1997, however, Counts 1 and 2 were dismissed, and Giangola pled guilty to Count 3.  See Addendum at 1.  He was sentenced to CYFD to age twenty-one.  See id.

On March 1, 1999, Giangola was arrested in Albuquerque and charged with: (i) Receiving

or Transferring a Stolen Motor Vehicle; (ii) Receiving or Transferring a Stolen Motor Vehicle; and (iii) Resisting/Evading/Obstructing an Officer.  See id.  On January 3, 2000, in the Second Judicial District Court, Giangola pled guilty on Count 1, and on Counts 2 and 3, the State moved for Nolle Prosequi.  See id.; State v. Giangola, D-202-CR-9900747.  He was sentenced to three-years probation.  See Addendum at 1.  On February 28, 2000, the Second Judicial District Court found that there was probable cause that Giangola was guilty of Failure to Comply with Conditions of Probation.  See id.  A warrant was issued.  See id.  On June 28, 2000, he was sentenced to the Department of Corrections ("DOC") for three years, with credit for 798 days, with two-years parole to follow.  See id.

On March 23, 1999, Giangola was arrested in Albuquerque and charged with: (i) Unlawful Taking of A Motor Vehicle; (ii) Aggravated Assault on a Peace Officer (first count); (iii) Aggravated Assault on a Peace Officer (second count); and Contributing to the Delinquency of a Minor.  See id.  On January 3, 2000, he was found guilty on Count 2, and the State moved for Nolle Prosequi on the remaining counts.  See id.; State v. Giangola, D-202-CR-9901043, Second Judicial District of the State of New Mexico.  On June 28, 2000, Giangola was sentenced to the DOC for three years concurrent with CR99-747.  See Addendum at 1.

On December 31, 1999, Giangola was arrested in Albuquerque and charged with: (i) Harboring or Aiding a Felon; and (ii) Conspiracy.  See id.  The United States Probation Office, however, located no additional information from the Albuquerque Police Department.  See id.

On May 30, 2000, Giangola was arrested in Albuquerque and charged with: (i) Unlawful Taking of a Motor Vehicle; and (ii) Larceny $250.00 to $2500.00.  See id.  On June 7, 2000, the State moved for Nolle Prosequi on these charges.  See id.

On July 7, 2000, Giangola was arrested in Albuquerque and charged with: (i) Larceny; (ii)

-4-

Unlawful Taking of a Motor Vehicle; (iii) Unlawful Taking of a Motor Vehicle; (iv) Resisting/Evading/Obstructing an Officer; and (v) Concealing Identity.  See id. at 2.  On February 2, 2001, in the Second Judicial District Court, he was found guilty on Count 2, and the State moved for Nolle Prosequi on the remaining counts.  See id.; State v. Giangola, D-202-CR20002268.  He was sentenced to thirty-four months to be served concurrently with his sentences for cases 99-747 and 99-1043.  See Addendum at 2.

On March 31, 2003, Giangola was charged with Bringing Contraband Into A Prison in Albuquerque, New Mexico.  See id.  On October 14, 2003, in the Second Judicial District Court, he was sentenced to three years in the DOC to run consecutive to the remaining time in 99-747, in 99-1043, and in 00-2268.  See id.

On May 2, 2005, the New Mexico Parole Board determined that there was a Parole Violation in Albuquerque, New Mexico.  See id.  According to the New Mexico Parole Board, Giangola was instructed by his supervising officer to report and submit to urinanalysis testing, and he failed to do so.  See June 28, 2007 Memo. at 2.  He was determined to be on absconder status from June 14, 2005 until his arrest on August 15, 2005.  See id.  On September 20, 2005, Giangola was arrested in Albuquerque for a Probation Violation and a Drug Violation.  See Addendum at 2.

On March 13, 2007, Giangola was arrested in Albuquerque for: (i) Trafficking Controlled Substance; (ii) Conspiracy to Traffic Controlled Substance; (iii) Possession of Controlled Substance; and (iv) Tampering with Evidence.  See id.  The Albuquerque Police Department and Bernalillo County Sheriff Department report that, on March 18, 2007, Martinez Bail Bond posted a $37,500.00 bond, with the condition that Giangola have no contact with co-defendant Frank Garcia.  See id.  The case remains pending.  See id.

**7.    Health.**

Giangola stated that he is in fair health.  See Bond Report at 3.  His shoulder, chest, and arm are hurting from a motorcycle accident from April of 2007.  See id.

**8.    Employment History.**

Giangola is currently unemployed.  See id.  He was previously employed at Scaffold System Inc. for three months, until his motorcycle accident in April of 2007.  See id.

**9.    Financial Statement.**

There are no income assets, liabilities, income, or expenditures to report.  See id.

## PROCEDURAL BACKGROUND

Giangola was on vacation with his mother in California when the District of New Mexico issued an arrest warrant.  While the United States District Court for the Central District of California initially considered releasing him to his mother's custody, after securing his criminal history, the court ultimately did not.  This Court has now had a number of hearings on Giangola's detention, and remains convinced that he should be detained.

**1.    New Mexico Warrant.**

Giangola was indicted in New Mexico on April 10, 2007.  See June 28, 2007 Memo. at 1.  According to documentation that the case agent for the Federal Bureau of Investigation provided to Pretrial Services in the Central District of California, the warrant for Giangola was issued in the District of New Mexico on April 11, 2007, under Docket Number 07CR706.  See Bond Report at 2.  The issue of bail was not addressed on the face sheet of the California Bond Report.  See id.

**2.    California Proceedings.**

Giangola arrived in Riverside, California on May 26, 2007, on vacation with his mother.  On June 5, 2007, Giangola was arrested in the Central District of California pursuant to a Complaint

and Warrant issued in the District of New Mexico, on April 11, 2007, charging Giangola with Possession with Intent to Distribute more than 5 Grams of Cocaine Base and Possession with Intent to Distribute Cocaine, a violation of 21 U.S.C. § 841.  See Addendum at 1; Bond Report at 5. United States Pretrial Services in the Central District of California stated in its Bail Report that Giangola's mother is willing to sign an Unsecured Appearance Bond on her son's behalf.  See Bond Report at 2.  After speaking with Curtiss, the Pretrial Services in the Central District of California initially considered that the Court could mitigate the danger to the community and the risk of nonappearance by imposing certain conditions.  See id. at 6.  Pretrial Services in California did not, however, have Giangola's entire criminal history at the time it submitted its report to the Court.  See June 28, 2007 Memo. at 1.

On June 6, 2007, Giangola made an Initial Appearance in the Central District of California before the Honorable Oswald Prada, United States Magistrate Judge.  See June 28, 2007 Memo. at 1; June 11, 2007 Memo. at 1.  Giangola waived his "Identity Hearing" and reserved his right to a Preliminary Hearing upon his removal to the District of New Mexico.  June 11, 2007 Memo. at 1. See United States v. Bowman, 380 F.3d 387, 388-89 (9th Cir. 2004)(explaining that the defendant "was represented by appointed counsel and waived the opportunity for a hearing to determine whether he was the same person named in the indictment or warrant and thus show the Government charged the wrong person. . . . [and thereby] waived his right to an identity hearing.").  The Central District of California subsequently ordered Giangola detained and removed to the District of New Mexico.  See June 28, 2007 Memo. at 1.  The Central District of California found him to be a danger to the community and a non-appearance risk.  See id.

3.      **New Mexico Bond Report.**

Giangola is charged in a two-count Indictment with possession with intent to distribute crack

cocaine in Count I and powder cocaine in Count II.  See Indictment, filed April 10, 2007 (Doc. 2).

On June 11, 2007, Pretrial Services for the District of New Mexico prepared an Addendum to the

Bail Report from the Central District of California.  See June 11, 2007 Memo.  Pretrial Services

stated that Giangola was then before the Court for an Initial Appearance, Arraignment, and

Detention, having been removed from the Central District of California.  See id.  Upon review of

all available case materials and the Bail Report prepared in the Central District of California on June

5, 2007, the Pretrial Services for the District of New Mexico recommended that Giangola remain

in custody pending resolution of his charges based on the identified risks.  See id.

      **4.**      **Proceedings Before Judge Schneider.**

      Giangola was arraigned on the two-count Indictment before the Honorable W. Daniel

Schneider, United States Magistrate Judge, on Tuesday, June 26, 2007, for an Initial

Appearance/Arraignment/Detention Hearing.  See Clerk's Minutes, filed June 26, 2007 (Doc. 5).

Giangola entered a plea of not guilty.  See id.  The Pretrial Services for the District of New Mexico

recommended that Giangola remain in custody pending resolution of this matter.  See June 11, 2007

Memo. at 1.  Judge Schneider conducted a detention hearing, and concluded that Giangola was both

a danger to the community and posed a risk of nonappearance.  See Clerk's Minutes, filed June 26,

2007 (Doc. 5).  Judge Schneider detained him.  See Order of Detention Pending Trial, filed June 26,

2007 (Doc. 7).

      A few days later, Giangola asked Judge Schneider to review his detention.  See Appeal of

Detention Order at 1-3, filed June 27, 2006 (Doc. 8).  Giangola appeared before Judge Schneider

on a Motion to Reconsider Detention Order.  See Clerk's Minutes, filed June 26, 2007 (Doc. 5).  In

the motion hearing before Judge Schneider, Giangola's counsel proposed that Giangola be released

to the third-party custody of his mother.  See Federal Digital Tape Recorder ("FTR") at 9:45:26-

9:46:13.[1]  The United States Probation Office ("USPO") made contact with Curtiss, who was born on August 6, 1957 and the USPO advised that she resides at 7720 Snowberry St. N.W., Albuquerque, New Mexico.  See June 28, 2007 Memo. at 1.  She is purchasing her home and has resided at this address since 1989 with her teenage daughter.  See id.  She informed the USPO that Susan C. Little and Associates had employed her as an office manager/paralegal for seven years. See id. Curtiss further advised that she has never been arrested, and a inquiry revealed no criminal history.  See id.

Curtiss indicated that she was aware of Giangola's involvement in the 18th Street Gang and criminal behavior as a youth.  See id.  She acknowledged having had little control over her son's behavior in the past.  See id. Curtiss expressed, however, that she has seen a positive change in Giangola.  See id.

While Pretrial Services respected Curtiss' willingness to assist with conditions of release, Pretrial Services advised that a review of Giangola's criminal history indicates his offenses began as a juvenile, while under his mother's supervision.  See June 28, 2007 Memo. at 1. Pretrial Services also stated that there is no indication that she would be able to exert control over him as an adult. See id.

Pretrial Services attached to its report an amended criminal history report that reflects additional information regarding a parole violation in 2005.  See Addendum at 1-2.  The District of New Mexico stood by its recommendation that Giangola remain in custody pending resolution of this matter.  See June 28, 2008 Memo. at 2.  Pretrial Services based its position on the risk factors

---

[1]  The hearing was recorded on tape rather than by written transcript.  The Court is, therefore, unable to provide pinpoint transcript citations to the dialogue at the hearing.  The Court instead cites to the record meter.

the Central District had identified in the original bail report, in the addendum to the bail report dated June 11, 2007, and on Giangola's offense history.  See id.

      **5.**      **The Court's First Detention Hearing.**

Following the arraignment, Giangola's counsel appealed the entry of Judge Schneider's detention order.  See Appeal of Detention Order at 1-3, filed June 27, 2006 (Doc. 8).   The Court also conducted a detention hearing on July 5, 2007.  See Clerk's Minutes at 1, filed July 5, 2007 (Doc. 12).  At the detention hearing, the United States argued that Giangola's criminal history was "stunning" for a person who is not yet 27 years of age.  Transcript of Hearing (taken July 5, 2007) at 31:5 ("Tr.")(Fouratt).[2]  It also represented that Giangola faced 262 to 327 months of incarceration. See id. at 34:7 (Fouratt).  The Court concluded that Giangola was a danger to the community and therefore would not be released from custody.  See Order at 1, filed September 10, 2007 (Doc. 22). Accordingly, the Court upheld the detention order.  See id. at 3.

      **6.**      **Giangola's Motion to Reconsider and the Court's Second Detention Hearing.**

On August 23, 2007, Giangola moved the Court for a hearing to review conditions of release and to order, following such hearing, his release from custody.  See Doc. 19 at 1.  In his motion, Giangola asked the Court to reconsider its previous detention order, and to release him on conditions necessary to guarantee the community's safety and his appearance at future Court proceedings. See id.  First, Giangola requested the Court to schedule a hearing so that additional evidence and testimony could be presented.  See id. at 3.  Giangola represented that this evidence would establish that he is not a danger to the community nor a flight risk.  See id.  Second, he asserted that the evidence would establish that there are conditions or a combination of conditions that the Court can

---

      [2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

impose to safeguard the community's safety and his appearance at all future Court proceedings.  <u>See</u> <u>id.</u>  Specifically, Giangola requested that he be released to La Pasada Halfway House in Albuquerque, New Mexico.  <u>See</u> <u>id.</u> ¶ 2, at 2.

Giangola represented that he was interested in finding employment to help his mother with her financial difficulties.   <u>See</u> <u>id.</u>  He also agreed that, if the Court released him from custody, he would participate in all counseling for his substance abuse problem and would attend any mental-health counseling that the Court or Pretrial Services requires.  <u>See</u> <u>id.</u> ¶ 3, at 2.  Furthermore, he stated that he would comply with any drug testing that Pretrial Services requires.  <u>See</u> <u>id.</u>

Giangola assured the Court that he would abide by all conditions of his release and that he would appear for all future court proceedings. <u>See</u> <u>id.</u> ¶ 4, at 2.  Giangola stated that he understood that, if he should use any illegal substance while on conditions of release, the Court would revoke his release, and the Court would return him to jail.  <u>See</u> <u>id.</u> ¶ 3, at 2.  Assistant United States Attorney Roberto Ortega opposed Giangola's release.  <u>See</u> <u>id.</u> ¶ 6, at 2.

At the September 12, 2007 hearing, Giangola again represented that he wanted to be released so that he could get a job to help his mother.  <u>See</u> Transcript of Hearing at  4:6-11 (taken September 12, 2007)("Tr.")(Padilla).  Giangola contended he was not a flight risk, because he is a life-long resident of New Mexico.  <u>See</u> <u>id.</u> at 4:4-5 (Padilla).  Giangola proposed that he be released to a halfway house that would provide him structure by drug testing him and providing him with counseling for his drug problem.  <u>See</u> <u>id.</u> at 5:17-23 (Padilla).  Giangola also proposed that he be placed on a GPS electronic-tracking monitor.  <u>See</u> <u>id.</u> at 6:4-6 (Padilla).  Giangola represented that he had been offered part-time employment as a tattoist.  <u>See</u> <u>id.</u> at 7:3-6 (Padilla).  Giangola acknowledged that he has an extensive arrest record for someone who is 26 years old.  <u>See</u> <u>id.</u> at 14:14-15 (Padilla).

The United States contended that Giangola has a gang affiliation with the 18th Street Gang. See id. at 18:21-23 (Ortega). The United States noted that at least two of Giangola's felony convictions involved assault on a peace officer. See id. at 18:23-3 (Ortega). The United States argued that, even after Giangola attained majority, a pattern of adult convictions began, and continued up until the present offense. See id. at 20:1-3 (Ortega). The United States contended that it did not believe a halfway house would be able to control Giangola's "impulsive behavior any more than his mother has in the past." Id. at 20:13-14 (Ortega).

On April 28, 2008, the Court entered a Memorandum Opinion and Order granting in part and denying in part Giangola's motion to reconsider. See Doc. 58. The Court granted Giangola's request for a hearing to present new evidence, but determined that the new evidence, if any, did not persuade the Court that Giangola was not a danger to the community and was not a flight a risk. See id. at 1. Accordingly, the Court denied his request that the Court release him on conditions. See id.

**7.      Suppression Motion and Motion to Amend Conditions of Release.**

On July 24, 2008, the Court issued a Memorandum Opinion and Order granting Giangola's Motion to Suppress. See Doc. 65. The United States contemplates taking an appeal to the United States Court of Appeals for the Tenth Circuit. See Motion ¶ 2, at 1. Giangola moves the Court to allow him to be released on his own recognizance during the pendency of the case if the matter is appealed to the Tenth Circuit. See id. Giangola represents that he will reside with his mother, Charlene Curtis, at 7720 Snowberry St. NW, Albuquerque, New Mexico 87102. See id.

## LAW REGARDING RELEASE PENDING APPEAL

A motion seeking release pending an appeal by the United States is controlled by 18 U.S.C. § 3143, which provides that a court should treat a defendant in this situation according to 18 U.S.C. § 3142. See 18 U.S.C. § 3143(c). Under 18 U.S.C. § 3142, a defendant may be detained only if the

judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  In making this determination, the court must consider the following factors: (i) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  See 18 U.S.C. § 3142(g).

18 U.S.C. § 3142(g) provides:

The judicial officer shall, in determining whether there are conditions of release will reasonably assure the appearance of the person required and the safety of any other person and the community, take into account the available information concerning --

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including --

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection

> (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may
> upon his own motion, or shall upon the motion of the Government,
> conduct an inquiry into the source of the property to be designated for
> potential forfeiture or offered as collateral to secure a bond, and shall
> decline to accept the designation, or the use as collateral, of property
> that, because of its source, will not reasonably assure the appearance
> of the person as required.

18 U.S.C. § 3142(g).

The Tenth Circuit reviews de novo mixed questions of law and fact concerning detention decisions, but accepts "the district court's findings of historical fact which support that decision unless they are clearly erroneous." United States v. Cisneros, 328 F.3d 610, 613 (10th Cir. 2003).

In United States v. Cos, 198 Fed.Appx. 727 (10th Cir. 2006), the defendant appealed the district court's order of continued detention pending appeal by the United States of the district court's order granting the defendant's motion to suppress. See 198 Fed.Appx. at 728. The Tenth Circuit affirmed  the district court's decision to detain Cos pending appeal. See id. The district court analyzed the 18 U.S.C. § 3142 factors and found:

> The nature and circumstances of the offense charged remain unchanged.  While the
> weight of the evidence may have changed in light of the Court's suppression of the
> firearm, that factor should not be given much weight because the United States may
> appeal that ruling.  The gun is still available as possible evidence; the issue is
> whether it is admissible.

United States v. Cos, 198 Fed.Appx. at 730.

On appeal, the defendant asserted that the district court erred in three ways in determining that he should be detained pending appeal. See id. The second argument was that the district court did not accord proper weight to its suppression order. See id. The third argument was that the district court did not, in making its detention decision, conduct a proper evaluation of the factors in 18 U.S.C. § 3142. See United States v. Cos, 198 Fed.Appx. at 730.

As to the suppression order, the defendant argued that the district court should have treated

its suppression order with more significance.  See id.  Under 18 U.S.C. § 3142(g)(2), the district court must consider the weight of the evidence against the person as a factor in the detention determination.  As the district court explained in its order, although the suppression order may have impacted this factor, the factor itself should not be given much weight, because of the government's appeal and the fact that the gun was still available as possible evidence.  See United States v. Cos, 198 Fed.Appx. at 730.

The Tenth Circuit in United States v. Cos stated that the only issue was whether or not the gun will be admissible at trial.  See 198 Fed.Appx. at 730.  In a detention hearing, the district court is permitted to consider the evidence sought to be suppressed as if it were admissible.  See 18 U.S.C. § 3142(f)(2)(B)("The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing.").  The Tenth Circuit stated: "Consequently, the district court did not err in its consideration of this factor.  It was appropriate to downplay the significance of the suppression order by noting that the gun is still available as possible evidence."   United States v. Cos, 198 Fed.Appx. at 730.

As to the evaluation of the 18 U.S.C. § 3142(g) factors, Cos argued that the district court erred in its evaluation of the § 3142(g) factors.  See United States v. Cos, 198 Fed.Appx. at 730.  With respect to the first factor, in its detention order, the district court noted that, regardless of the suppression order, "[t]he nature and the circumstances of the offense charged remain unchanged." Id. at 730-31.  The Tenth Circuit agreed that the circumstances leading to the charge weighed in favor of detaining the defendant pending the United States' appeal.  See id. at 731.

With regard to the second factor, the weight of the evidence against the person, the Tenth Circuit noted again that, for the purposes of the detention hearing, "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of

information at the [detention] hearing."  18 U.S.C. § 3142(f)(2)(B).  The Tenth Circuit stated that, because the discovery of the firearm was information that might be considered at the detention hearing regardless of its admissibility as evidence in the criminal trial, this factor also weighed in favor of detaining the defendant pending appeal.  See United States v. Cos, 198 Fed.Appx. at 731.

The third factor involves consideration of the history and characteristics of the person, including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, or parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3).  The district court in United States v. Cos concluded that Cos' history and characteristics raised a significant risk of non-appearance.  See 198 Fed.Appx. at 731.  The Tenth Circuit agreed.  See id.

Finally, on the nature and seriousness of the danger factor, the district court in United States v. Cos reiterated that the defendant's criminal history reflected prior offenses of a serious nature and a record of probation violations.  See id.  The district court stated: "[The defendant's] conduct reveals an individual who has refused to reform his criminal ways."  Id.  The Tenth Circuit again agreed with the district court that this factor weighed in favor of detaining the defendant pending appeal.  See id.  The Tenth Circuit stated that the district court did not err in its evaluation of the factors in 18 U.S.C. § 3142(g) and in its decision to detain the defendant pending appeal.  See United States v. Cos, 198 Fed.Appx. at 731-32 .  The Tenth Circuit affirmed the district court's decision denying release pending appeal, because the record supported the district court's findings

and because there was no legal error.  See id. at 732.  See also United States v. Rogers, 371 F.3d 1225 (10th Cir. 2005)(noting that the district court continued to hold the defendant in detention pending the resolution of the government's appeal of the district court's suppression order); United States v. Flynn, 16 Fed.Appx. 958, 959 (10th Cir. 2001)(stating that a defendant "may be released pending appeal, however, if he meets the conditions of 18 U.S.C. § 3143(b)(1)(A) & (B), [and thus] . . . is not a flight risk or a danger to others or the community.").

## ANALYSIS

Giangola has not presented new evidence that convinces the Court that it should release him. Accordingly, the Court will deny his motion.  The Court continues to believe that Giangola poses a danger to the community.  The Court also continues to believe that Giangola is a flight risk.

## I. THE COURT CONTINUES TO BELIEVE THAT GIANGOLA IS A DANGER TO THE COMMUNITY.

The Court continues to believe that Giangola poses a danger to the community and is particularly concerned about putting police officers at risk, given Giangola's criminal history.  The Court has concerns about the number of crimes in Giangola's criminal history, and is specifically concerned about his past crimes against property and crimes of violence against individuals, including police officers.  The Court is concerned that, if the Court had to send U.S. Marshals to arrest Giangola, he might resist and hurt them.

## II. THE COURT CONTINUES TO BELIEVE THAT GIANGOLA IS A FLIGHT RISK.

Giangola contends that he is not a flight risk and that he is not facing as much time as the United States represented to the Court at the prior detention hearing.  The Court believes Giangola continues to be a flight risk, because he has a history of probation and parole violations, because of his acknowledged history of drug use, and because of the offenses with which he is currently

-17-

charged.  Giangola has not shown that the Court can reasonably expect him to conform to this Court's conditions any better than he has the state court's restrictions.

## III.    THERE ARE NO CONDITIONS OR COMBINATION OF CONDITIONS THAT THE COURT CAN ORDER IN GIANGOLA'S CASE THAT WILL REASONABLY ASSURE THE SAFETY OF THE COMMUNITY AND GIANGOLA'S APPEARANCE AT ALL FUTURE COURT PROCEEDINGS.

Although the Court acknowledges that the risk of nonappearance may be mitigated by a combination of conditions that can be imposed, it does not believe it can be sufficiently mitigated. Giangola contends that he should be released on his own recognizance to reside with his mother. The Court does not believe, however, that the conditions that Giangola proposes will mitigate much, if at all, the danger he presents to the community or his risk of flight.

Curtiss did not have much control over her son when he lived with her in the past.  The Court is also concerned that Giangola was not employed at the time of his arrest.  Although there may be some mitigating circumstances that may explain why Giangola was not employed, he does not appear to have assets, employment, or other circumstances that bring stability to people in their lives.  These facts do not take away the Court's concern that Giangola appears to be making a living with criminal activity.  The Court continues to believe that the strongest evidence that Giangola is a danger to the community can be found in his criminal history.  Residing with his mother would not provide adequate assurance given the danger Giangola poses to the community.  For these reasons, the Court believes that continued detention of Giangola pending trial is appropriate.

In making this decision, the Court took into consideration the recent development that the Court granted Giangola's suppression motion.  The nature and circumstances of the offense charged, however, remain unchanged.  While the weight of the evidence may have changed in light of the Court's suppression of material evidence, that factor should not be given much weigh because the

United States may appeal that ruling.  The suppressed evidence is still available as possible evidence; the issue is whether it is admissible.  The Court remains free to consider the suppressed evidence as if it were admissible, and that evidence supports a conclusion that Giangola remains a danger to the community.  It is appropriate to downplay the significance of the suppression order at this stage, because the suppressed evidence is still available as possible evidence. `

**IT IS ORDERED** that the Defendant's Motion to Amend Conditions of Release is denied. Giangola has not convinced the Court that it should release him, and the Court will thus deny his motion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
   United States Attorney
Roberto D. Ortega
   Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Louren M. Oliveros
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

     *Attorney for the Defendant*